MARY DRISCOLL v. JAMES CARLIN.

1. An assignment of the common errors refers only to what is technically known as the record, and not to a bill of exceptions.

2. The defendant's employee had, in the course of his employment, de-

posited timbers upon the sidewalk of a street, and had improperly, against the defendant's instructions, left them there for several days. The plaintiff, while passing along the sidewalk with due care, fell over them and sustained injury. *Held*, that the defendant was responsible for the damages.

On error to the Hudson Circuit.

Argued at June Term, 1887, before BEASLEY, CHIEF JUSTICE, and Justices SCUDDER, DIXON and REED.

For the plaintiff in error, *Vredenburgh & Garretson.*

The opinion of the court was delivered by

DIXON, J. This is a writ of error to the Hudson Circuit. The only error assigned is the common one that the judgment was given for the plaintiff instead of the defendant. The only complaint of error in the plaintiff's brief relates to the charge of the court, and it is not pretended that there exist any errors save those which are alleged to appear in the bill of exceptions.

Correct practice requires that the grounds relied upon for reversal by writ of error should be specified in the assignment of errors. *Donnelly* v. *State*, 2 *Dutcher* 463, 512. The common errors relate only to the record itself, and not to the outbranches of the record. Errors outside of the strict record should be specially assigned. 1 *Archb. Pr.* 501. The bill of exceptions is not a part of the record in this technical sense, as is plain from the statutory provisions under which such bills exist. The act of March 7th, 1797 (*Pat. L., p.* 245 ; *Rev., p.* 886, § 242), speaks of the bill as showing exceptions not found in the record itself, and was designed to provide a mode of examining errors which could not properly be inserted in the record. *Ford* v. *Potts*, 1 *Halst.* 388. So, the former rule of this court, now embodied in the Practice act (*Rev., p.* 887, § 245), requires the bill to be returned and filed *with the record.* It plainly then is not a part of the strict record.

It follows that upon an assignment of the common errors only, the court cannot be required to look into the bill of exceptions.   On this ground the judgment should be affirmed.

But if we consider the point made by the plaintiff in error, the same result must be reached.

The case was that the defendant below had directed his workmen to remove several sticks of timber from Montgomery street to Sixth street, Jersey City, and there to put them in his yard; that his workmen had carted them to Sixth street and unloaded them upon the sidewalk near the curb in front of the yard, and there had left them; that several days afterwards the plaintiff, while passing along the sidewalk with due care, after dark, had stumbled over the timbers and received the injury for which she sued.  The plaintiff in error now contends that as he had directed his workmen to put the timbers in his yard, which was lawful, and they had left them upon the sidewalk, which was unlawful, he cannot be held responsible for their act.

The application of the rule *respondeat superior* does not depend upon the obedience of the servant to his master's orders nor upon the legality of the servant's conduct.   Thus in *Bayley* v. *M. S. & L. R. R. Co., L. R.,* 8 *C. P.* 148, the instructions of the defendant to its porters were that if passengers were in the wrong carriage the porter should inform them of the fact and request them to alight, but should not remove them; the plaintiff was in the proper carriage; but the porter, thinking he was not, violently pulled him out and threw him down on the platform; the company was held responsible; Kelly, C. B., declaring the principle to be that where a servant is acting within the scope of his employment and in so acting does something negligent or wrongful, the employer is liable, even though the acts done may be the very reverse of that which the servant was actually directed to do.   The same principle was announced by this court in *Aycrigg* v. *N. Y. & E. R. R. Co.,* 1 *Vroom* 460, although the facts were held to put the case outside of it.   The defendant's pilot, being in command of its ferry boat for the purpose of transporting

passengers and freight from one side of the North river to the other, voluntarily steamed down the river to catch a burning barge, which he towed to a place where she set fire to the plaintiff's yacht. Haines, J., stated the question to be whether the pilot was acting within the scope of his authority—within the course of the business of his employment— and decided that he was not.

But the present case does not seem to call for the application of the rule under which a master is held responsible for the tortious act of his servant done in violation of his orders, but rather for the consideration of the question whether a person who has ordered a certain thing to be done, the doing of which imposes upon him the duty of seeing that something further be done, can escape responsibility for the non-performance of that duty by showing that he ordered his servant to perform it and his servant neglected to do so; for it is plain that when the defendant's workmen unloaded his wagon in front of his yard, they were obeying his directions, and the depositing of the timbers upon the edge of the sidewalk, as a step in their transfer from the wagon to the yard, was neither a tortious nor a careless act, and was in reasonable pursuance of the defendant's orders. When, however, that was done, it was incumbent on the defendant to see that the timbers were not left for an unreasonable length of time upon the public highway; and it was this duty, resting upon the defendant personally, which was never performed, and through the non-performance of which the plaintiff sustained her injury. Thus viewed, the case resembles *Whatman* v. *Pearson, L. R.*, 3 *C. P.* 422, where the defendant's workman, contrary to his instructions, left his horse and cart unguarded in the street while he went to dinner, and the horse ran away and injured the plaintiff's property, for which injury the defendant was held liable. Indeed, the case comes within the familiar rule that if one does or authorizes the doing of an act which creates a public nuisance by unlawfully obstructing or interfering with the free use of a highway or otherwise, he becomes answerable in damages to those who suffer special

injury thereby.   1 *Add. on Torts*, § 234; *Harlow* v. *Humiston*, 6 *Cow.* 189; *Runyon* v. *Bordine*, 2 *Green* 472; *Temperance Hall Association* v. *Giles*, 4 *Vroom* 260; *McAndrews* v. *Collerd*, 13 *Vroom* 189.

The judgment below must be affirmed.